Good morning, Your Honors. May it please the Court. Kevin Gomarnik on behalf of Appellant Ms. Ponkey, and I would like to save two minutes for rebuttal. All right. The heart of this case, the issue before this Court, really comes down to one of fairness. It's what level of disparity must there be between the stronger party that drafts a contract of adhesion versus the weaker party that has no ability to negotiate any of those terms. And here Ms. Ponkey submits that if this Court were to affirm the district court decision, it essentially creates an impossible unconscionability standard where no matter how one-sided an agreement is, it's not unconscionable, save and accept the circumstance whereby it states the stronger party doesn't need to arbitrate versus the weaker party must arbitrate. Here, let's just focus on the issue of lack of mutuality. We have a circumstance where the claims that a consultant is most likely to bring must be arbitrated, and they already start off at an unfair disadvantage. They waive the right to a full statute of limitations, waive the right to punitive damages, waive the right to consequential damages. LuLaRoe has no such waiver. On the other side of it, LuLaRoe, within its own contract, has a carve-out for the claims that it's most likely to bring, which is a violation of the non-solicitation provision and enforcement of its own intellectual property rights. And what's even more egregious is in seeking that injunctive relief, there's a unilateral waiver on consultants' end that they cannot argue that damages are an adequate remedy or that LuLaRoe must post a bond. So that alone already creates a circumstance where there's a lack of mutuality, and cases have found unconscionability with far less. But I want to drill down more specifically on some of these provisions. The one-year statute of limitations provision actually has two components of unconscionability to it. The first is there's a one-year limitation period when the statutory periods allowed here are up to four years, and California cases and Ninth Circuit cases uniformly hold that that in and of itself is already unconscionable. For example, in Picorni v. Quickstart, and that's another MLM case, it specifically says, particularly in situations like this one where no special circumstance necessitates a non-mutual provision, a unilateral reduction in the statute of limitations is an indicator of substantive unconscionability. And let me know, in Picorni, the limitation period was, per agreement, reduced to two years. Here, it's even more. It's reduced to one year. And on top of that, there's additionally a waiver of the discovery rule. Based on Marino v. Sanchez, which is a California decision, if the contract identifies the limitation period beginning from a specific event without any mention of discovery, those are considered to suggest that the discovery rule has been waived. In Marino v. Sanchez, it's stated that the action must be filed within one year from the date of the home inspection. It was found to have waived the discovery rule. Here, it's not that different. The action must be filed within one year from the date of the alleged conduct giving rise to the cause of action. No mention of discovery rule. On the issue of the waiver of exemplary and consequential damages... Can I ask you to jump to the confidentiality provision? Yeah, absolutely. So, I mean, it seems like that's a feature of arbitration, not a bug, in terms of, you know, get it out of the public forum and do arbitration. Sure. Ms. Ponke is not arguing that a confidentiality provision is improper. What she's arguing is if it restricts informal discovery, that's what makes it unconscionable. And so you have to look at the breadth of the arbitration provision and the confidentiality provision therein. Here, we have an extremely broad confidentiality provision which states that the entire arbitration process, not just the hearing, not just the proceedings, the whole process, that's investigation, filing, discovery, the hearing itself must be kept confidential. On top of that, it states that any dispute must remain confidential. A dispute is something that's much broader than just a claim. You could have a dispute that arises before even filing an arbitration, and based on the terms of the agreement, that must remain confidential. And here, the confidentiality provision is broader than in other cases, including the Ninth Circuit, where there is already a finding of unconscionability based on its breadth. And also in the Ramos decision, we have a similar provision, just like in the Ramos decision, which also found that confidentiality was unconscionable because it restricts the ability to conduct informal investigation. I guess another question that I have about this is you're challenging a number of specific provisions. Yes. Is there some sort of quantifiable amount of agreement we must reach with you for you to, I mean, so California has the sliding scale, right, of rebalancing procedural and substantive unconscionability. I can't remember exactly the number. It's like five or six provisions that you're pointing out. Let's say we agree with you on three of them, but not on the others. Enough? Like, what is the line there? How much agreement do we have to have with you in terms of these provisions you're challenging to get there? Absolutely. Yeah. So it is a sliding scale. You need to have a showing of at least a minimal amount of procedural unconscionability or at least a showing of a minimal amount of substantive unconscionability. And so if you have, let's say, a low level of procedural unconscionability but a high level of substantive unconscionability, that's enough to... Right, I get that. And I'm asking, like, how many of these provisions do we have to conclude are unconscionable to get us to the necessary level of substantive unconscionability for you to prevail? I think at least two, although here I think there's much more than just two, especially because there is more than a low level of procedural unconscionability. The Ninth Circuit specifically states that California arguably has a conflict in terms of whether reasonable market alternatives could preclude a finding of a minimal level of procedural unconscionability. But the Ninth Circuit specifically sides with the cases where reasonable market alternatives do not refute the unconscionability of a contract of adhesion. That's the law within the circuit. So we already have a low level of procedural unconscionability, but on top of that there's more because there are provisions within the agreement that require an individual consultant to really know the law. And courts within California have specifically stated that's akin to putting it in a completely different language. So here we have a provision, for example, on the statute of limitations. It says one year or the shortest allowed under the law. What does that mean? We're here right now arguing that. And indeed what makes it even more egregious is you could have a consultant view that, think there's a one-year statute of limitations, come into arbitration and have LuLaRoe argue actually it's less than one year. Because look right here, it says or shortest permissible under the law. So there's a number of surprising aspects which gives rise to at least a moderate level of procedural unconscionability, if not a high level of procedural unconscionability. But even with a low level of procedural unconscionability, California cases essentially find a high level of unconscionability, substantive unconscionability, when there are two, three terms potentially. Here we have at least five or six. And I've already talked about the confidentiality. There's the exemplary and consequential damages. Every single California court to have addressed this issue uniformly finds that a waiver of statutory remedies is unconscionable. What the district court did, though, was it relied on a case called Pacificare. What happened in Pacificare was there was a waiver of punitive damages, and because the plaintiff had brought a RICO claim pursuant to RICO, there was the ability to get treble damages. So the issue there was is treble damages punitive in nature such that there is a waiver of statutory rights? But it couldn't make that decision because the case law on that wasn't clear, and it decided because of this ambiguity it seems something that's more it's better to send this to the arbitrator, whereas here there's no dispute that there are exemplary damages allowable based on the claims pleaded, and there's no dispute that the contract expressly states no exemplary damages. Now, on the issue of attorneys' fees, what also makes this one-sided is it states that all parties must pay for their own costs and attorneys' fees. That's another statutory waiver. Cases in California, except for one, which I'll address, uniformly state that having language such as that is essentially one-sided because of the plaintiff in that circumstance. If it were able to get statutory attorneys' fees as a prevailing party pursuant to the agreement, that's waived because every side must pay for their own attorneys' fees. And in Carbajal, which is a case that's right on point, and then there's at least two or three other California cases that rely on Carbajal, what Lula Roe is going to argue here is there is a jams provision which allows the arbitrator to award any kind of remedy allowable under law. What Carbajal explains, though, is when you have a specific provision such as one that states that each side must pay for their own attorneys' fees compared to a broader provision where the arbitrator may be able to award remedies under law, the more specific provision governs. And in Carbajal, there was a specific provision that each side must pay for their own attorneys' fees and another provision which said arbitrator will be entitled to award all types of relief that would otherwise be available to the parties in a court proceeding under state or federal law. And here, if you were to adopt the argument from Lula Roe that because there's a broader statement allowing the arbitrator to award remedies under the law, then that really runs contrary to Carbajal. Before you run out of time, one other question I wanted to make sure to ask you is I believe that your friends on the other side are suggesting that the IP claim carve-out is not unilateral because your client would have IP rights. What would those be? My client has no IP rights. What you see in the consultant agreement is a number of provisions giving Lula Roe numerous IP protections. The sole provision that talks about a consultant's IP is that they waive all their rights to the IP and assign all their rights to IP concerning Lula Roe. I can't think of a single claim that a consultant would bring under a violation of a non-solicitation provision because that non-solicitation provision only bars a consultant from soliciting, nor could I think of any circumstance where there might be some intellectual property claim that would be brought. But even if defendants could conjure up some situation where there would be a claim brought under those, the test isn't could a consultant bring a claim under that. The test is which party is more likely to bring the claim under that provision, and here it's clearly Lula Roe. I know you wanted to save a little bit of time. Yes. Thank you, Your Honours. Good morning. May it please the Court, Counsel for Appellant. My name is Bill O'Hare, and I'm here on behalf of the appellees, LLR, Inc., and their affiliated companies and officers. I thought I'd maybe start with kind of a global, higher-level observation, if I may. We've got a single appeal from a single motion with a relatively limited record, and yet both sides have managed to cite 180 cases in their briefs. Some of that is just attributable to, I guess, the sort of permissive interlocutory appeals, particularly in cases where they're denied, and there's just so many cases. It's also, to some extent, expanded by just the sheer number of challenges that the plaintiff here has chosen to make. But as a result of that, what invariably happens is, on almost any given issue, there's some element of some case that could seemingly be drawn by the plaintiff or by us to support seemingly different positions. But in terms of what might sort of reconcile and explain that, most of the time, it's not just a question of, for example, counting clauses, as Judge Forrest inquired about. There is a qualitative analysis. Certain elements that are intrinsic to the arbitration process, which is what's critical, are so obviously improper. So, for example, we've got cases where the stronger party gets to pick the arbitrator. Now, those courts may talk about a bunch of other stuff, but you could kind of put a period on it after that. Well, I mean, if you want to talk big picture, I think that's a good way to start. And it seems to me that the big picture in California is, while arbitration is favored, we think of it in terms of it being truly an alternative forum, but not a disadvantageous forum, right? And so to the extent that an arbitration agreement makes what you can recover and how you go about recovering that disadvantageous as compared to just regular litigation, we've got a problem. And I think that, again, your friend across the aisle in this case has made some pretty good arguments that his client is in a vastly different position in arbitration with your client than she would be if she was in court. And isn't that a problem? It would be if it were. And so I think, for starters, let's talk about things like damage limitations, shortened statute of limitations, that sort of thing. Those are not part of the arbitration agreement. They're provisions in the body of the agreement that will apply if we're litigating in court. And there's nothing in this agreement that says the arbitrator is somehow handcuffed or not empowered to judge, for example, the validity of those provisions. And so the only rationale to say that provision or the arbitration agreement can't be arbitrated is an assumption not permitted under the FAA that these are not issues arbitrators can decide. These are issues only courts can decide. And we know under Buckeye and a bunch of other cases that we're here to analyze what is a fully severable agreement to arbitrate. All that happens if we agree to arbitrate, and the court allows it, is all these disputes over, you know, what damages can you recover, does the statute of limitations limitation apply or not, which was actually, I might add, litigated in this arbitration. As was the cost-shifting provision, actually litigated in this arbitration, and we ended up paying all the costs. Now, why is it that that arbitral forum under this contract is a fair forum, meaning that one side's not put at a disadvantage as it relates to the dispute resolution provision? Even on the attorney's fee provision, which I might add, replicates the Code of Civil Procedure section in the California Arbitration Act, which sets as a default rule that each party pays their own respective attorney's fees. And we know under the California Code of Civil Procedure that there are three ways to get legal fees. One is by contract. Yes, this contract says you don't have a contractual right to legal fees. And neither party has cited, and we haven't found, any case that has said that it is unlawful for parties to contract to say you don't have a contractual right to legal fees. And, of course, that's augmented by the California, you know, Code of Civil Procedure cost provision. Again, see, there's three ways to get attorney's fees. By contract, this contract takes that out, but also by statute or by law. And, in fact, and there was a suggestion in reply brief that somehow we didn't actually argue this in arbitration. The arbitration award is clear that the arbitrator twice addressed this issue, initially early in the procedure, in the proceedings, and he confirms it. It's in the body of the arbitration award saying, sorry, LuLaRoe, you've got to pay all the arbitrator's fees, all the costs of arbitration. And that's not something that's just an after the fact, gee, the plaintiff got lucky. It's because all that they were denied was their contractual right, or ours for that matter, to recover attorney's fees, which is entirely lawful. But the court applied, in that case, the AAA rules, which gives the arbitrator much broader authority to determine how to allocate costs. And so, again, I think a number of these provisions have nothing to do with the arbitral form itself. And in terms of, you know, whether these clauses do or don't affect it, we're not suggesting it's just a matter of geography, meaning it's not just a question of, you know, where in the body of the agreement is a provision physically located. The question is, does the provision in question, you know, contaminate or make the arbitration process itself unfair? And so a number of the cases, in addition to these sort of extreme provisions like, you know, we pick the arbitrator, that Amway case in De Corny, where the body of arbitrators consists of people at jams who've gone through a three-way orientation course with Amway, where in the case involving Winston and Strawn, where the arbitrator is specifically instructed, you can't second-guess. That's the Ramos case also. You can't second-guess the decisions of firm management unless they directly conflict with our contract. All of those things involve elements of the contract that are specific to arbitration and telling the arbitrator, you can't do this or you must do that. In terms of the scope of arbitration... and specifically the prohibition from conducting informal discovery, because he cited to the Ramos case, and I think that's very helpful to the appellant in this case. Sure, and we've also cited the Sanchez-Keset case, and I guess we can get into the provision, but one shortcut is the Kilgore case from this court that says the arbitrator can deal with that. There's a number of other cases that say the same thing. And in the Jams and AAA rules, they also, which again are incorporated into, made a part of this agreement, not only referenced specifically in the contract, there's a link to tell you where to go get it and all that. Those rules also make clear that the arbitrator gets to manage that process, and as this court determined in Kilgore, said, you know, that's a housekeeping kind of thing. The arbitrator gets to govern it. But the first thing I'd say is, first, it is a mutual provision on its face. A number of these other cases that are out there really say things like, you know, you can't talk to other people. Forgive me, out of these 180 cases, I sometimes disconnect the name and the concept, but I mean, there's even one that says, you employee, you can't even talk to your coworkers, but specifically exempts the employer and says they can. So, first, the arbitrator can sort this out, but secondly, you know, what is the phraseology of it? The phraseology of our provision, it starts with saying, the parties and the arbitrator shall maintain the confidentiality of the arbitration process. And, you know, words do matter, and so, in a sense, that's invoking what we all understand to be, you know, a feature, not a flaw or whatever, of the arbitration process, and that that's what this is intended to address. I would suggest, and, of course, those JAMS and AAA rules, you know, also allow the arbitrator to address it, and I would suggest that you can't necessarily assume that this mutual provision in practice works against us. In an employment context, particularly if you're bringing discrimination claims, the treatment of everybody really matters. In this context, you know, it's not only unemployment, there's not discrimination claims, there's not claims of disparate treatment, so it's not self-evident, and there's certainly nothing in the record to say this mutual provision should be automatically assumed to be non-mutual in effect. And there's multiple relationships occurring. The relationships in this enterprise are not merely between, in this case, the plaintiff and LuLaRoe. You know, there are collaborations between and among the participants in this system that they are closer to than we are, and so to the extent that this provision in some way hampers or limits things, and we would suggest it does not, the question is, does it unfairly or one-sidedly do it? And it's their burden to demonstrate it, and what we know about the context suggests it's not. The other thing I might add, different from so many cases... In terms of the one-sidedness, can you address the carve-out for the intellectual property suits? Well, again... What intellectual property rights would they possibly have? Well, there is a provision in the agreement that actually... Let's see, it's the... It's the Retailer Consultants Agreement, paragraph 34, where there's actually a grant of a license by the consultant or retailer to LuLaRoe of various intellectual property rights, including their name, their likeness, and so forth, so we know there's IP involved. The other thing I would suggest is under the Tompkins case from this court and the Balthasar case from the California Supreme Court, even in those cases, I believe they were explicitly one-sided carve-outs, if you will, that in that event, as long as there's some basis in the record for some reasonable commercial need, even that's okay, and particularly, you know, as I think it's Balthasar said, we aren't here to just fix everything that may give an advantage to one side or the other. And it is evident that this entire system is clearly built on, you know, trademarks, a system, trade secrets, confidential information. So to the extent that LuLaRoe has more of it, that is the economic and business justification. The other thing I'd suggest is I think there's some factual misstatement on the scope of it. There's not a waiver of the right to show irreparable harm or a bond on injunctions. That's in the so-called Q guidelines. That's before you have the contract where that provision does exist. That contract has no arbitration clause. So it's not a carve-out of anything. It's basically saying, well, you're in this application process, which, again, unlike all these employment cases, the applicant has weeks and weeks and weeks to do it. I have one more quick question before you run out of time. On the procedural unconscionability aspect, you've made an argument that there's no oppression here, there wouldn't be oppression here, because under Dean Whittier, there were alternatives available to the plaintiff that don't contain allegedly oppressive provisions. And so that she chose your client's company isn't an example of oppression. My question is, did you put into the record examples of alternatives available to her that don't have the kinds of provisions that are being challenged in this case? Well, yes and no. One, we put in the example of her own testimony that she considered a whole range of them. We put in the example of the one she chose. But I guess to some extent, this may come down to a burden of proof issue. Right, and I think there's case law that suggests that a defendant who's raising that issue needs to present some demonstration that there actually are alternatives that have different types of provisions that wouldn't be challenged. Frankly, Your Honor, in this sea of cases, there are cases that suggest both ways. So then the answer to my question is no, you haven't put in specific examples of other contracts that would have been available in the marketplace that don't have the kinds of provisions that are being challenged. Sure, what we don't know is what's in the other provisions. And so, again, I would suggest that it's not our burden to establish that. And, of course, we've got a couple of decisions that confirm that... and I don't think they indicate. In fact, even the Grandpa case doesn't suggest that, you know, this court has said, we don't accept Dean Witter out of that sea of cases. I think all those things are essentially fact-bound in terms of what's going on in each of those cases. And, in fact, even in the Grandpa, the court said, we don't need to make that choice, because in that event, they found their procedural unconscionability both ways. All right, thank you, Counsel. Thank you, Your Honors. Okay, can I jump right in? Absolutely. What I'd like to hear you address most is his argument that we don't have unconscionability because all the provisions that are being challenged aren't specific to arbitration. They're going to apply no matter what to this relationship. So can you address that point? Sure. The Ninth Circuit in Tompkins, that's 840 F3D at 1032, and I'm going to quote, it may be that where a plaintiff challenges the validity under Section 2 of the precise agreement to arbitrate at issue on the ground that certain general contract provisions as applied to the agreement to arbitrate render it unconscionable, such a challenge should be considered by the court. And I just want to focus on the practicality of having provisions that have an effect on arbitration outside of the arbitration provision itself. You could have a defendant or a company have a very vanilla arbitration provision that has no unconscionable aspects to it whatsoever, but then you could have completely outside of that a number of waivers that would only apply in the arbitration context. And I understand that defendants are saying that, sure, these waivers would apply in litigation as well, but let's take the contract as written. There is no intended litigation in a regular court of law as written. All the claims would have to go to an arbitration. So just because these provisions are outside of the arbitration provision doesn't mean that they don't render the arbitration an unconscionable venue. There was discussion on... There's also a qualitative component. I talked about mutuality and the lack thereof and how that's of paramount importance. I didn't hear much discussion on that from defendants. I want to talk a little bit about the statement that the statute of limitations and the costs were actually litigated. They were litigated, but it was heavily disputed. And LuLaRoe heavily argued that there was an applicable one-year statute of limitations and that there should be a splitting of costs. And in analyzing unconscionability, courts are supposed to look at what did the contract language say at the time when it was contracted for. You can't look at subsequent events or acts. And I want to quote from the Supreme Court case in California, Sonic Halabasas, in determining unconscionability, the inquiries into whether a contract provision was unconscionable at the time it was made. Also, the Ninth Circuit in Lim, the critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties, not whether it is unconscionable in light of subsequent events. So just because Ms. Ponke was able to convince the arbitrator of a certain interpretation does not mean that as written, the agreement, and based on all the California decisions out there, doesn't suggest that it's unconscionable for a statement that each side must pay for their own costs. All right. Thank you, counsel. Thank you. Thank you, both sides, for your argument today. The matter is taken under submission. That concludes our calendar for this morning and for the week. We're adjourned. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: THOMAS, NGUYEN, FORREST